UNITED STATES of America

v.

Lucy ZONCA

No. 97–120–CR–ORL–19C.

United States District Court,
M.D. Florida,
Orlando Division.

June 9, 1999.

Lucy Zonca, pro se.

John E. Polk, Sanford, FL, Mary A. Mills, Federal Public Defender's Office, Tampa, FL, for Lucy Zonca.

Ana Escobar, U.S. Attorney's Office, Orlando, FL, for United States.

*ORDER*

FAWSETT, District Judge.

This case was considered by the Court on Petition on Probation and Supervised Release (Doc. No. 13, filed September 1, 1998), Brief of the United States (Doc. No. 28, filed January 19, 1999), Response to Brief of the United States (Doc. No. 31, filed January 29, 1999), Report and Recommendation of the United States Magistrate Judge (Doc. No. 32, filed March 8, 1999), Objections to Report and Recommendation of Magistrate Judge Regarding Violations of Probation (Doc. No. 36, filed April 29, 1999), Transcript of the Final Revocation Hearing (Doc. No. 35, filed April 19, 1999), Order to Show Cause at Final Revocation Hearing (Doc. No. 37, filed May 6, 1999) and Amended Notice of Hearing (Doc. No. 38, filed May 11, 1999) at a hearing held June 9, 1999 attended by Defendant, counsel for Defendant and counsel for the Government. The Court has considered the record *de novo.* Upon hearing the matters presented, it is **ORDERED:**

1. The Report and Recommendation of the United States Magistrate Judge (Doc. No. 32) is **ADOPTED and APPROVED**. Defendant's objections (Doc. No. 36) are **OVERRULED** for the reasons stated at the hearing.

2. The Petition on Probation and Supervised Release (Doc. No. 13) is **GRANTED**, and Defendant's probation (Doc. No. 12, filed October 1, 1997) is **REVOKED**.

3. Defendant shall be committed to the custody of the United States Bureau of Prisons to be incarcerated for a term of **ten (10) months**. The Defendant shall be immediately **REMANDED** to the custody of the United States Marshall to await designation of a facility for service of this sentence.

4. In all other respects the Judgment in a Criminal Case (Doc. No. 12, filed October 1, 1997) remains in full force and effect.

5. Upon service of the sentence herein, Defendant shall be discharged from further jurisdiction of the Court in this case.

6. Defendant has been advised of her right to appeal.

***REPORT AND RECOMMENDATION***

GLAZEBROOK, United States Magistrate Judge.

## I. INTRODUCTION

The government asks this Court to revoke Lucy Zonca's probation and to incarcerate her because she made false statements in the context of her civil bankruptcy case. Docket No. 13. Perjury is a felony—even in a civil context.[1] 18 U.S.C. § 1621, 1623. Congress chose to use language in the perjury statute that applies without distinction both to perjury committed in a civil proceeding and to perjury in a criminal prosecution. *United States v. Holland,* 22 F.3d 1040, 1047—48 (11th Cir.1994). This Court fully agrees with the reasoning of the United States Court of Appeals for the Eleventh Circuit:

[W]e categorically reject any suggestion, implicit or otherwise, that perjury is somehow less serious when made in a civil proceeding. Perjury, regardless of the setting, is a serious offense that results in incalculable harm to the functioning and integrity of the legal system as well as to private individuals. In the

---

1. Zonca does not dispute that perjury in a civil context is a crime that is properly subject to prosecution. During Zonca's January 22, 1999 final revocation hearing, however, it was the Chief Executive who took the position in the United States Senate that a false or misleading statement in a civil context did not constitute a prosecutable crime, and that perjury in a civil context was not a crime which prosecutors ever pursued. The selection of a case for prosecution is a matter resting solely within the discretion of the Chief Executive, acting through the Attorney General and the United States Attorney. AUSA Ana Escobar has confirmed that she has received full authority to prosecute Zonca notwithstanding the public position taken by the Chief Executive.

instant case Holland's perjury inexcusably wasted valuable and scarce resources. His actions needlessly consumed court time, forced the Federal Bureau of Investigation and the United States Attorney's Office to engage in prolonged investigations, and attempted to prevent private citizens, the *Williams* plaintiffs, from satisfying their judgment.

*Holland*, 22 F.3d at 1047—48 (opinion by Tjoflat, C.J.).

## II. PROCEDURAL HISTORY

On July 9, 1997, Zonca pled guilty to the use of unauthorized access devices. Docket No. 8. Lucy Zonca a/k/a Lucille Mumbower admitted that she had applied for and used twelve credit cards to obtain $33,801 in goods and services, and that she had used other individuals' names, dates of birth, and social security numbers without permission. Docket No. 7 at 12 (plea agreement). On October 1, 1997, the Honorable Patricia C. Fawsett entered a judgment sentencing Zonca to a term of probation of two years with six months home confinement, and recommending mental health counseling. Docket No. 12 at 2(a). While on probation, the judgment prohibited Zonca from committing another federal, state, or local crime. Docket No. 12 at 2(b).

On September 1, 1998, the United States Probation Office filed a petition charging that Zonca had violated the terms of her probation by committing federal and state crimes.[2] Docket No. 13. On January 22, 1999, the case came on for a final revocation hearing pursuant to Fed. R. Cr. P. 32.1 (revocation of probation or supervised release); 18 U.S.C. § 3401(i) (designation of magistrate to conduct revocation hearing); and Local Rule 6.01(c)(16) (delegation of violation proceedings to magistrate for report and recommendation). Docket No. 13. United States Probation Officer

Joseph Hassey testified at the revocation hearing, as did Robert E. Miller, the attorney who filed Zonca's bankruptcy petition. Probation Officer Hassey's testimony was credible. Zonca did not testify. Through her attorney, Zonca denied violating any law. *See also*, Docket No. 31. Zonca argued that the government had failed to prove that Zonca had made the omissions in her bankruptcy petition knowingly and wilfully.

## III. THE CHARGED VIOLATIONS

### A. *Perjury*

#### 1. The Charge

The government charges that Zonca knowingly and fraudulently made false statements under penalty of perjury in her bankruptcy proceeding in violation of 18 U.S.C. § 152(3) (false statements in a bankruptcy proceeding); in violation of 18 U.S.C. § 1623(a) (false declarations before a court); and in violation of 18 U.S.C. § 1621(2) (perjury). Docket No. 13 at 2, ¶ ¶ 4—9; Docket No. 28 at 4—6.

#### 2. False Statement in a Bankruptcy Proceeding [18 U.S.C. § 152(3) ]

A person who "knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury . . . in relation to any case under Title 11 . . ." is guilty of an offense against the United States. 18 U.S.C. § 152(3). In order to prove a violation of 18 U.S.C. § 152(3), the United States must prove that:

First; That on or about the date charged, there was pending in the United States Bankruptcy Court for the Middle District of Florida, a bankruptcy case docketed as Case Number 98–00064, wherein "Lucille Mumbower" was the debtor; and

Second: That the defendant knowingly, willfully, and fraudulently made

---

**2.** On January 19, 1999, the United States filed a brief in support of the petition. Docket No. 28. On January 29, 1999, the defendant filed a brief in opposition to the petition. Docket No. 31.

a false declaration in that case under penalty of perjury.

### 3. False Declarations Before a Court [18 U.S.C. § 1623(a)]

It is a federal crime for anyone, in any declaration or statement under penalty of perjury in any proceeding or court before the United States, to knowingly make a false material declaration. 18 U.S.C. § 1623(a).

### 4. Perjury [18 U.S.C. § 1621(2)]

■ It is a federal crime for anyone, in any declaration or statement under penalty of perjury, to wilfully subscribe as true any material matter which she does not believe to be true. 18 U.S.C. § 1621(2). The statute applies to false statements knowingly made in a written declaration that the author "subscribes as true" under penalty of perjury. Thus, false statements made in a bankruptcy petition can lead to a violation of this subsection, as well as a concealment of asset prosecution. *See United States v. Bauer*, 132 F.3d 504 (9th Cir.1997).

### 5. Application to Zonca

■ At the revocation hearing, the government proved the perjury charges against Zonca. As charged in the petition, Docket No. 13, ¶ 4, Zonca filed a petition for bankruptcy in the United States Bankruptcy Court for the Middle District of Florida in January 1998 under the name Lucille Mumbower. Declaring that her voluntary bankruptcy petition was true and correct under penalty of perjury, Zonca failed to list any other names used by her in the past six years, including the name Lucy Zonca. Instead, Zonca reported "none." GX2. Zonca made the omission knowingly and wilfully to avoid identification with her prior fraud conviction and restitution judgment. In her bankruptcy petition, Zonca also failed to list all properties that she owned. Although Zonca listed her residence at 1261 Tadsworth Terrace, Lake Mary, Florida, Zonca failed to list her ownership in properties located at 561 Remington Oaks Drive, Lake Mary,

Florida, and Silver West at the Crossings, Seminole County, Florida (Lot 94) as charged. *See* Docket No. 13, ¶ 5. The Court finds that Zonca failed to list the properties knowingly and wilfully so as to avoid making the properties available to creditors as part of her bankruptcy estate.

Zonca failed to list her federal restitution debt in the Summary of Schedules section of her petition as charged. *See* Docket No. 13, ¶ 5. Incredibly, Zonca told Probation Officer Hassey that she did not list the two properties and the restitution debt on the advice of her bankruptcy counsel. Zonca failed to disclose that she was part owner of ABC Mothers, Inc., a babysitting service co-owned by Zonca and Diane Mumbower [GX4], under both the Schedule B—Personal Property section and in Schedule I—Current Income of Individual Debtor(s) sections of her bankruptcy petition as charged. *See* Docket No. 13, ¶ ¶ 7, 8. Zonca failed to indicate that she was an officer, director, partner or owner of ABC Mothers, Inc. in the Statement of Financial Affairs section of her bankruptcy petition as charged. *See* Docket No. 13, ¶ 9. Zonca told Hassey on a home visit that she was afraid that it would hurt her daughter's chances of obtaining credit if she listed ABC Mothers in a bankruptcy filing.

Accordingly, this Court finds from the evidence at the revocation hearing, that 1.) Zonca knowingly, willfully, and fraudulently made a false declaration in her bankruptcy case under penalty of perjury in violation of 18 U.S.C. § 152(3); 2.) Zonca knowingly made a false material declaration under penalty of perjury in her bankruptcy proceeding in violation of 18 U.S.C. § 1623(a); and that 3.) Zonca wilfully subscribed as true a material matter which she did not believe to be true in a declaration or statement under penalty of perjury in violation of 18 U.S.C. § 1621(2).

### B. *Concealment of Debtors' Assets*
#### 1. The Charge

The government charges that Zonca knowingly and fraudulently concealed as-

sets from her creditors in her bankruptcy proceeding in violation of 18 U.S.C. § 152(1). Docket No. 13 at 1—2, ¶¶1—5; Docket No. 28 at 2—4.

### 2. Concealment of Debtors' Assets [18 U.S.C. § 152(1)]

A person who "knowingly and fraudulently conceals ... in connection with a case under Title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor" is guilty of an offense against the United States. 18 U.S.C. § 152(1). In order to be found guilty of a violation of 18 U.S.C. § 152(1), the United States must prove that:

*First*: That on or about the date charged, there was pending in the United States Bankruptcy Court for the Middle District of Florida, a bankruptcy case docketed as Case Number 98–00064, wherein "Lucille Mumbower" was the debtor;

*Second*: That the property or an interest in the property described was a part of the bankruptcy estate of such debtor; and

*Third*: That the Defendant knowingly, willfully and fraudulently concealed the property from creditors *or* from the United States Trustee who had responsibility for the control or custody of such property, as charged.

■■■ The term "debtor" simply means the person or corporation concerning whom a case under the Federal bankruptcy laws has been commenced. When a debtor files a voluntary petition under the bankruptcy laws, there is created an estate comprised, among other things, of all legal or equitable interests of the debtor in property wherever located and by whomever held as of the commencement of the bankruptcy case. Thus, any interest owned by the bankruptcy debtor in any property at the time the bankruptcy case begins is a part of the bankruptcy estate. The fact that another person or entity also owned an interest in the property with the bankruptcy debtor does *not* prevent the

interest of the bankruptcy debtor in the property from being a part of the bankruptcy estate. The bankruptcy estate also includes proceeds, produce, rents, or profits of or from property of the estate, except earnings from services performed by an individual debtor *after* the commencement of the case.

■■■ The United States Trustee for the Bankruptcy Court for the Middle District of Florida is an officer of the Court, and was at all relevant times responsible for the control or custody of all property constituting the bankruptcy estate in Case Number 98–00064. The term "creditor" means a person or company that has a claim or a right to payment from the debtor that arose at the time of or before the bankruptcy court issued its order for relief concerning the debtor. The term "custodian" means a person authorized by the bankruptcy court to administer the property of the debtor and includes a bankruptcy administrator or trustee.

■■■ The term "concealment" or "conceal" is given its ordinary meaning, that is, to prevent disclosure or recognition of, or to place out of sight or to withdraw from being observed. A person "fraudulently conceals" property of the estate of a debtor when that person knowingly withholds information or property, or knowingly acts for the purpose of preventing the discovery of such property, intending to deceive or to cheat a creditor or a custodian ordinarily for the purpose of causing some financial loss to another or bringing some financial gain to one's self. Fraudulently concealing property of the estate of the debtor may include transferring property to a third party or entity, destroying the property, withholding knowledge concerning the existence or whereabouts of property, or knowingly doing anything else by which that person acts to hinder, delay or defraud any of the creditors or the United States Trustee.

### 3. Application to Zonca

■■■ At the revocation hearing, the United States proved that Zonca failed to

list her ownership in properties on her bankruptcy petition in violation of 18 U.S.C. §§ 152(1). Zonca's act of concealment was aimed at purposely preventing the creditors from discovering her property. Likewise, Zonca failed to declare her ownership interest in ABC Mothers in an attempt to conceal it from her creditors. Lastly, Zonca failed to list her federal restitution debt in an attempt to conceal that she had been convicted of fraud under that name, and to prevent her creditors from discovering the assets and properties which Zonca held in that name. She did not even tell her own bankruptcy lawyer about her fraud conviction or other name.

Accordingly, this Court finds from the evidence at the revocation hearing, that Zonca's interest in the property described [561 Remington Oaks Drive, Lake Mary, FL; Lot 94, Silver West at the Crossings, Seminole County, FL; and shares in ABC Mothers, Inc.] was a part of Zonca's bankruptcy estate, and that Zonca knowingly, willfully and fraudulently concealed the property from creditors and from the United States Trustee, as charged, in violation of 18 U.S.C. § 152(1).

### C. Notary Fraud

#### 1. The Charge

The government charges that Zonca used her expired Illinois notary stamp to notarize her own signature on a document outside of Illinois in violation of Illinois Notary Public Act § 85–293 (effective Sept. 8, 1987) [codified at West's Smith–Hurd Illinois Compiled Statutes Annotated, Act 312, hereinafter cited as Ill. Stat. Ann. § __]. Docket No. 13 at 1—2, ¶ ¶ 1—3; Docket No. 28 at 7.

**3.** Section 2–106 relates to recording of notary appointments or commissions by the county clerk. Where a prospective notary fails to pick up his or her commission, the Secretary of State is directed to mail a second notice containing the following sentence: "I should also like to remind you that any person who attests to any document as a notary and is not a notary in good standing with the Office of

#### 2. Illinois Notary Public Act

The Illinois Notary Public Act and the Illinois Criminal Code, when read together, forbid a public officer, including notary public, from engaging in official misconduct. Ill. Stat. Ann. §§ 2–106,[3] 7–104, 33–3. The Illinois Notary Public Act defines the term "official misconduct" as generally meaning:

> the wrongful exercise of a power or the wrongful performance of a duty and is fully defined in Section 33–3 of the Criminal Code of 1961. The term "wrongful" as used in the definition of official misconduct means unauthorized, unlawful, abusive, negligent, reckless, or injurious.

Ill. Stat. Ann. § 7–104. The Illinois Notary Public Act also prohibits the out-of-state use of a notary stamp, and requires a notary to resign if she changes her name or moves out of the county. Ill. Stat. Ann. §§ 3–135, 4–101.

A public official commits official misconduct when, in her official capacity, she commits either of the following acts: 1.) she knowingly performs an act which she knows she is forbidden by law to perform; or 2.) with intent to obtain a personal advantage for herself or another, she performs an act in excess of her lawful authority. Ill. Stat. Ann. §§ 33–3. In a prosecution in Illinois under § 33–3(b), the State must plead and prove that the defendant actually knew what she did was forbidden by law, and must specify the precise law which the defendant is alleged to have violated. *People v. Samel,* 115 Ill. App.3d 905, 909, 71 Ill.Dec. 738, 451 N.E.2d 892, 895 (2d Dist.1983).

In a prosecution in Illinois under § 33–3(c), the State must plead and prove 1.)

the Secretary of State is guilty of official misconduct and may be subject to a fine or imprisonment." Ill. Stat. Ann. § 2–106. Although the Illinois Notary Public Act defines "official misconduct" and refers to the Illinois Criminal Code, Ill. Stat. Ann. § 7–104, the Illinois Notary Public Act does not otherwise criminalize official misconduct.

that the defendant acted with an intent to obtain a personal advantage for herself or another, and 2.) that the defendant performed an act [specified in detail] in excess of her lawful authority. *Samel,* 115 Ill. App.3d at 909, 71 Ill.Dec. 738, 451 N.E.2d at 895. In the case of a notary public, the term "lawful authority" derives its meaning from the Illinois Notary Public Act. *Id.;* Ill. Stat. Ann. §§ 7–104, 3–135, 4–101. Official misconduct is a Class 3 felony under Illinois law, and not a misdemeanor. Ill. Stat. Ann. §§ 33–3; Unified Code of Corrections, §§ 5–1, 5–1–9, 5–1–14; Criminal Code §§ 2–7, 2–11.

### 3. Application to Zonca

The United States proved at the revocation hearing that Zonca had filed a quitclaim deed in Seminole County on May 14, 1998, five months after she filed her voluntary petition in bankruptcy on January 5, 1998. In a September 14, 1998 letter to Hassey, Zonca stated that the reason she took her grandson off the quitclaim deed was because she "did not want his name mixed up in her restitution payment." GX8. Zonca had notarized the document on May 14, 1998, stating that her Illinois notary license would expire in August 1998. In reality, Zonca's Illinois notary license had expired fourteen years earlier in August 1984. In addition, Zonca stated on the deed that her residence was 1790 College Green Circle, Elgin, IL 60123 when, in fact, her true address was in Seminole County, Florida.

The government did not attempt to prove that Zonca performed an act which she knew was forbidden by law in violation of Ill. Stat. Ann. § 33–3(b). This Court finds from the evidence at the revocation hearing, that the government has proved 1.) that Zonca performed an act [use of her expired Illinois notary stamp to notarized her own signature on a document outside of Illinois] in excess of her lawful authority as a notary public with intent to obtain a personal advantage for herself or another [to conceal assets from creditors], and 2.) that Zonca performed that act in excess of her lawful authority in violation of Ill. Stat. Ann. § 33–3(c) and § 7–104 (the "unauthorized, unlawful" exercise of a power).

### IV. CONCLUSION

The Court finds that Zonca committed these violations of federal and Illinois state law during the term of her probation. Zonca has therefore violated the condition of her probation that she not commit another federal or state crime during her period of probation. Docket No. 12 at 2(b). It is therefore RECOMMENDED that the United States District Court issue an order to show cause why defendant's probation should not be revoked.

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.